IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
JANUARY 2000 SESSION

## STATE OF TENNESSEE v. WILLIAM M. HUKOWICZ

**Appeal as of Right from the Criminal Court for Wilson County**
**No. 98-949, 98-949 A.B     J.O. Bond, Judge**

---

### No. M1999-00073-CCA-R9-CD - Filed August 18, 2000

---

Following a suppression hearing, the Wilson County Criminal Court, J.O. Bond, J., ordered certain portions of the defendant's statement given to police suppressed, holding that the defendant had exercised his right to remain silent. The state filed an interlocutory appeal. The Court holds that the evidence does not preponderate against the trial court's finding that the defendant's refusal to answer other questions by stating "no comment" or a similar declaration was a proper assertion of the defendant's right to remain silent. However, the trial court should have suppressed the entire statement given following the defendant's assertion of his right to remain silent.
Remanded.

**T.R.A.P. 9 Appeal as of Right; Judgment of the Criminal Court of Wilson County is Remanded**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., and L. TERRY LAFFERTY, S.J., joined.

Frank Lannom, Lebanon, Tennessee attorney for the appellee, William M. Hukowicz.

Paul G. Summers, Attorney General & Reporter, Lucian D. Geise, Assistant Attorney General and Tom P. Thompson, Jr., District Attorney General and Robert Hibbett, Assistant District Attorney, attorneys for the appellant, State of Tennessee

**OPINION**

**FACTUAL BACKGROUND**

On May 6, 1998, William Hukowicz surrendered to Mt. Juliet Police after learning that he was under suspicion for rape, assault and kidnapping. After signing a waiver of his Miranda rights, the defendant gave a taped statement to authorities. The statement began as follows:

Detective: It's hard to remember everything that you tell me if I am not recording it. I simply cannot . . .

Hukowicz: Remember it all
Detective: Take note of it.
Hukowicz: That's true.
Detective: But, you were at home on Friday, the 24th day. Which was on a Friday. You were at your house which is here in Mt. Juliet?
Hukowicz: Correct.
Detective: Which is at 11459 Lebanon Road. Okay. At about 7:00 p.m. did Emily Parker come by your house?
Hukowicz: She did.
Detective: Okay, tell me about what happened.
Hukowicz: I cannot comment on that.
Detective: You cannot comment?
Hukowicz: I'd rather not right now.
Detective: Alright.
Hukowicz: I really do want to tell you, but I just know better.

Following that dialogue, the detective continued asking the defendant questions. The defendant answered some questions and refused to answer others. When the defendant refused to answer, he said "no comment," or made a similar statement. The defendant then indicated that he desired to speak with an attorney, and the detective terminated the interview.

Before trial, the defendant moved to suppress the statement. Following a suppression hearing, the trial court redacted those portions of the defendant's statement in which the defendant refused to answer questions, holding that the defendant was "exercising his constitutional right to remain silent." On appeal the State argues that the defendant did not properly invoke his right to silence when he answered some questions but not others.

## MOTION TO SUPPRESS

"That a defendant has a constitutional right to remain silent in the face of accusations against him, not only during his trial but also upon arrest and while in custody, is a rule so fundamental as to require little elaboration." Braden v. State, 534 S.W.2d 657, 660 (Tenn. 1976)(citations omitted). "While it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." Doyle v. United States, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L. Ed. 2d 91 (1976). Thus, the United States Supreme Court has held that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [the suspect] stood mute or claimed his privilege in the face of accusation." Miranda, 384 U.S. at 468 n.37.

However, it is not as clear how expressly an accused must invoke his right to remain silent, especially after he has signed a waiver of that right. In a similar case, the United States Supreme Court held that, in order for an accused to invoke his Fifth Amendment right to counsel, that invocation must be clear and unequivocal. Davis v. United States, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). This "clear articulation rule" mandates that when a suspect clearly requests an attorney, no further questioning may occur until an attorney has been made available or

the suspect reinitiates the conversation. Id. at 458. However, if the suspect's request for an attorney is ambiguous, then police may continue the questioning. Id. at 461-62. In order to determine whether the suspect has clearly articulated his desire to consult with an attorney, the Supreme Court employed the objective standard of whether a reasonable police officer under the circumstances would know that the suspect wanted to cease questioning. Id. at 458.

Most lower courts have adopted this analysis in the context of the right to remain silent as well, i.e., before the police must scrupulously honor a suspect's right to remain silent, the suspect must clearly articulate that right so that a reasonable police officer under the circumstances would understand the suspect's words and conduct to mean that the suspect wants to exercise his right to cut off further questioning. See Bowen v. State, 911 S.W.2d 555, 565 (Ark. 1995), cert. denied, 517 U.S. 1226, 116 S. Ct. 1861, 134 L. Ed.2d 960 (1996); People v. Arroya, 988 P.2d 1124, 1128 (Colo. 1999); State v. Owen, 696 So. 2d 715, 717-18 (Fla.1997); State v. Donesay, 959 P.2d 862, 871-72 (Kan. 1998); State v. King, 708 A.2d 1014, 1017 (Me. 1998); State v. Williams, 535 N.W.2d 277, 285 (Minn. 1995); In re Frederick C., 594 N.W.2d 294, 302 (Neb. 1999); State v. Greybull, 579 N.W.2d 161, 163 (N.D. 1998); State v. Reed, 503 S.E.2d 747, 750 (S.C. 1998), cert. denied, 525 U.S. 1150, 119 S. Ct. 1051, 143 L. Ed. 2d 57 (1999); Dowthitt v. State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996); State v. Bacon, 658 A.2d 54, 65 (Vt. 1995), cert. denied, 516 U.S. 837, 116 S.Ct. 117, 133 L.Ed.2d 67 (1995); State v. Ross, 552 N.W.2d 428, 429-30 (Wis. App.1996). The majority of federal jurisdictions considering the issue have applied the Davis rationale to the right to remain silent as well. See, e.g., Bui v. DiPaolo, 170 F.3d 232, 239 (1stCir. 1999); United States v. Ramirez, 79 F.3d 298, 305 (2d Cir. 1996), cert. denied, 519 U.S. 850, 117 S. Ct. 140, 136 L. Ed. 2d 87 (1996); United States v. Mills, 122 F.3d 346, 350-51 (7th Cir. 1997) (citing United States v. Banks, 78 F.3d 1190, 1196-97 (7th Cir. 1996)), cert. denied, 522 U.S. 1033, 118 S. Ct. 637, 139 L. Ed. 2d 615 (1997); United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995); Medina v. Singletary, 59 F.3d 1095, 1100-01 (11th Cir. 1995), cert. denied, 517 U.S. 1247, 116 S. Ct. 2505, 135 L. Ed. 2d 195,(1996); See also United States v. Hicks, 967 F. Supp. 242, 250 (E.D. Mich. 1997); United States v. Andrade, 925 F. Supp. 71, 79-80 (D. Mass. 1996); United States v. Sanchez, 866 F. Supp. 1542, 1558-59 (D. Kan. 1994).

In this case, although the defendant did not stand mute or assert that he did not want to answer any questions, we find ample evidence to support the trial court's finding that the defendant invoked his right to remain silent. When asked a question about the night in question, the defendant told the detective that he could not comment, and that although he wanted to comment, he "knew better." In our opinion, a reasonable police officer under the circumstances should have known that the defendant was invoking his right to terminate questioning.

Although we do not disturb the trial court's finding that the defendant's refusal to answer questions was an invocation of his right to remain silent, we find the court's redaction of the statement to be an inadequate remedy. To fully honor an accused's self-incrimination rights, the Miranda Court stated that "[o]nce warnings have been given, ... [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At that point, he has shown that he intends to exercise his Fifth Amendment privilege." Miranda, 384 U.S. at 473-74. Furthermore, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.' " Michigan v. Mosley, 423 U.S. 96, 104, 96 S. Ct. 321,

46 L. Ed. 2d 313 (1975); <u>State v. Cameron</u>, 909 S.W.2d 836, 845 (Tenn. Crim. App. 1995).

In this case, after the defendant invoked his right to remain silent, the police immediately continued to question him. It is clear that the police did not "scrupulously honor" his invocation of his right to remain silent. "Once an individual invokes his right to remain silent and the police fail to honor that invocation by continuing to interrogate him, that violation, by definition, is of constitutional magnitude." <u>State v. Crump</u>, 834 S.W.2d 265, 270 (Tenn. 1992) (citations omitted). Thus, we must determine whether the statement was obtained as a result of the prior constitutional violation and, therefore, must be excluded. The factors to be examined in determining whether a confession has been purged of the taint of a prior constitutional violation include: (1) the giving of proper Miranda warnings; (2) the temporal proximity of the police misconduct and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. <u>Brown v. Illinois</u>, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); <u>Crump</u>, 834 S.W.2d at 272.

Here, the police gave <u>Miranda</u> warnings to the defendant, but allowed no time to pass between the defendant's invocation of his right to remain silent and his statement. Moreover, there were no intervening circumstances. In this case, it is clear that the statement was obtained as a direct result of the constitutional violation. Therefore, the entire statement following the defendant's invocation of his rights, i.e., anything after the defendant said "no comment" the first time, must be suppressed. <u>Crump</u>, 834 S.W.2d at 272.

Accordingly, this case is remanded to the trial court for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE